# DODSON *v.* STATE

[No. 140, October Term, 1956.]

14

*Decided April 9, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS; HENDERSON, HAMMOND and PRESCOTT, JJ.

*C. Oliver Goldsmith* for the appellant.

*James H. Norris, Jr., Special Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, J. Harold Grady, State's Attorney for Baltimore City,* and *Preston A. Pairo, Jr., Assistant State's Attorney,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a conviction and sentence, upon a verdict of guilty by a jury, for unlawful possession and control of marihuana, after a motion for a new trial was denied by the Supreme Bench of Baltimore City.

The testimony offered by the State was to the effect that the defendant, appellant, Earl L. Dodson, with his wife occupied a first floor apartment in an apartment house at 2612 Maryland Avenue in Baltimore. This apartment was entered by the first floor front door. About 3:15 A. M. on December 15, 1955, Officers Davis, Shannahan and Wineke went to that apartment house, knocked on the door and were admitted by Earl Dodson. They searched the apartment and in a jewel box on the mantel found a package of cigarette papers. They then left the apartment and conducted a search of the surrounding area and found under the front porch of the

apartment house a glass jar wrapped in newspaper containing suspected marihuana, and a brown paper bag also containing suspected marihuana. The jar and the paper bag with their contents were sent to the United States Laboratory for analysis. Dodson was arrested and taken to the Central Police Station. On cross examination Officer Wineke testified that he had been to the apartment of Mr. and Mrs. Dodson on several occasions. Before December 15, 1955, he had been there three times. The first time the police conducted a search but the second and third times they did not. The fourth time was on December 15, 1955.

Lieutenant Carroll testified that he talked to Dodson and told him, after his arrest, that he was going to give his apartment a thorough search and Dodson asked if he could accompany him. Lieutenant Carroll consented and with Officer Scroggs and Dodson went to Dodson's apartment and conducted a search about 10:30 A. M. on December 15, 1955. In the fold of the covers under a cushion of the sofa in the apartment Officer Scroggs found two smoked cigarette butts. Officer Scroggs corroborated Lieutenant Carroll's statement. These cigarette butts were delivered to the chemist for analysis. Dodson told Lieutenant Carroll that his wife had not stayed in the apartment for four days. Dodson also said that he did not know anything about the marihuana or the cigarette butts. Lieutenant Carroll further testified without objection that the two partially smoked cigarettes were analyzed by the United States chemist and showed marihuana with a weight of 1.9 grains. The contents of the jar were analyzed and contained six ounces of marihuana, 392 grains. The paper bag contents were analyzed and found to contain marihuana with a weight of 389 grains. About ninety cigarettes could be made from all of this marihuana. On cross examination he stated that Dodson at no time admitted that the marihuana belonged to him.

One Joseph Watson testified in this case that he was arrested on December 16, 1955, and as a result it was disclosed that he had in his possession marihuana. He said he purchased this from the appellant, Earl L. Dodson, and identified him in the courtroom. He said he had made purchases from

Dodson three times and the transactions took place in a restaurant on Charles Street in Baltimore City. The first time Dodson approached him and asked him whether he wanted to buy any marihuana he told Dodson he did not have any money. Dodson told him his credit was good but he did not purchase any on that occasion. Dodson saw him several nights later and asked him the same thing. At that time he purchased from Dodson marihuana for $10.00, enough for about twenty or twenty-five cigarettes. Again about a week later he made another purchase from Dodson and again a month later also made a purchase from the defendant. Each purchase was for the sum of $10.00. When asked whether the marihuana found in his possession when he was arrested on December 16th was purchased from Earl Dodson, he replied: "Yes." On cross examination he admitted that he had been charged with possession of marihuana, had pleaded *nolo contendere* and his case had been continued until the Dodson case was tried. He had never been convicted of possessing marihuana.

At the end of the State's case the defendant's attorney moved for a directed verdict. This motion was denied. No evidence was offered by the defendant. The jury rendered a verdict of guilty and from the judgment and sentence, the defendant appeals.

The fact that Dodson had occupied the apartment alone for four days was some evidence that the cigarette butts were in his possession. His apartment, being on the first floor, and the entrance being through the front door, the glass jar and the paper bag found under the front porch could have been in his possession. Probability is the only requirement for admissibility and the weight of the evidence is for the trier of facts. *Purviance v. State,* 185 Md. 189, 193, 44 A. 2d 474, and cases there cited. Appellant lays great stress on the fact that the cigarette butts were not found until the second search was made, eight hours after the original search. In *Mazer v. State,* 212 Md. 60, 67, 127 A. 2d 630, it was contended that the mere fact that marihuana was found in appellant's car did not establish beyond a reasonable doubt that he put it there or that it was under his control.

However, it was pointed out that in that case that eight days prior to his arrest there was evidence of possession of marihuana by the defendant. It was said in that case: "The appellant argues that the mere fact that marihuana was found in his car does not establish beyond a reasonable doubt that he put it there, or that it was in his possession or under his control. Reasonable probability of its connection with the crime alleged, under the circumstances, is the only test of admissibility. *Watson v. State,* 208 Md. 210, 216, and cases cited. The question of reasonable doubt is for the trier of the facts." In the instant case there was evidence from Watson that he purchased marihuana from the defendant on three prior occasions.

In *Davis v. State,* 205 Md. 552, 109 A. 2d 774, the accused was convicted of having lottery tickets in his possession. It was contended, as here, that the evidence claimed by the State's witnesses to have been subsequently found in the defendant's automobile was not there when it was originally searched. The inference sought to be drawn was that it was "planted". This Court pointed out that the question was one of credibility. For other cases holding that the fact that persons other than defendant had access to the place searched did not prevent the consideration of the testimony that narcotics were found in a place under the control of the defendant and therefore in his possession, see *People v. Wong Fun,* 39 Cal. App. 2d 211, 102 P. 2d 774; *People v. Chan Chaun,* 41 Cal. App. 2d 586, 107 P. 2d 455; *People v. Brown,* 92 Cal. App. 2d 360, 206 P. 2d 1095, 1098; and *People v. Barnett,* 118 Cal. App. 2d 336, 257 P. 2d 1041.

Appellant's attorney, appointed by this Court to represent appellant here, further contends that the testimony of Joseph Watson was not sufficient corroboration of the officers' testimony because he, himself, had been charged with possession of narcotics. The jury was aware of this fact by Watson's own testimony and the weight was a matter for the jury. It could hardly be contended that Watson was an accomplice of Dodson. The charge on which Dodson was tried and convicted was possession of narcotics on December 15, 1955, and not at the time that he sold to Watson. Whether a

person to whom narcotics are sold is an accomplice of the defendant, who is charged with selling them or having them in his possession, is not before us in this case.

Although the Court of Appeals now has the constitutional authority to pass upon the sufficiency of the evidence to sustain a conviction in a criminal case tried before a jury, we will not inquire into or measure the weight of that evidence, and will not reverse the judgment if there is any proper evidence before the jury on which to sustain a conviction. *Briley v. State,* 212 Md. 445, 129 A. 2d 689, and cases there cited. We cannot say that there was no proper evidence before the jury on which to base a conviction. The trial judge was correct in denying the motion for a directed verdict. The judgment will be affirmed.

*Judgment affirmed, with costs.*