[No. 23642-7-II.   Division Two.   December 3, 1999.]

THE STATE OF WASHINGTON, *Appellant*, v. JAY WILLIAM REID, *Respondent*.

*Juelanne B. Dalzell, Prosecuting Attorney,* for appellant.
*Craddock Davis Verser,* for respondent.

SEINFELD, J. — The State appeals an order of suppression and subsequent dismissal of charges against Jay W. Reid for being in physical control of a vehicle while under the influence, for obstructing a police officer, and for felony possession of a firearm. It contends, inter alia, that the trial court erred in finding Reid's vehicle to be "safely off the roadway," as RCW 46.61.504(2) uses that term, and in relying on that finding to conclude that the arresting of-

ficer lacked probable cause to question and to arrest Reid. Because the trial court erred in applying this affirmative defense in the context of a suppression hearing, we reverse and remand for trial.

FACTS

Deputy Sheriff Delaney testified at a CrR 3.5 hearing that at 11:20 P.M. on May 16, 1998, he discovered Reid sitting asleep in the driver's seat of a car that had its engine running and was parked about three feet off the roadway on the shoulder of Highway 101 in Jefferson County. Although the driver's side window was partially rolled down, Delaney had to knock on the window and call out to Reid several times before he could "arouse" him. Finally, Reid opened the door and Delaney shook him until he "came around." Reid told Delaney that he was not driving.

Delaney detected a strong odor of alcohol coming from the vehicle and could smell intoxicants coming from Reid's breath. Thus, he asked Reid to step from the car and take a field sobriety test. Reid refused to get out of the car and take the test, claiming that "she" was driving the car. There was no other person in the vicinity.

Delaney reached into the car and turned the ignition off. Reid then took the keys out of the ignition but he dropped them on the car floor.

Delaney arrested Reid for refusing to take the sobriety test and for being in physical control of a vehicle while intoxicated. When Delaney informed Reid of his *Miranda* rights,[1] Reid responded, "F--- you. I know my rights."

In a search of Reid's vehicle incident to the arrest, Delaney found a loaded .38 caliber revolver. When asked about the firearm, Reid replied that he did not have a gun permit, the gun did not belong to him, and the gun had been stolen from California where it had been used to "kill cops." Reid also told Delaney he was going to "f---" and "kill" him.

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3D 974 (1966).

Following the suppression hearing, the trial court concluded that because Reid's vehicle was safely off the road, Delaney lacked probable cause to ask Reid to take field sobriety tests or to continue questioning him after Reid refused to participate. Consequently, the trial court suppressed Reid's statements to Delaney. Later, upon Reid's motion and with the State's agreement that it lacked sufficient evidence as a result of the court's ruling to obtain a conviction, the court dismissed the case with prejudice.

The State now appeals the suppression and dismissal. It challenges the trial court's findings, arguing that two of them fail to include significant details and that the court acted beyond the scope of the CrR 3.5 hearing in making the finding that Reid was safely off the road. The State also argues that Delaney had probable cause to make the arrest, and that the trial court erred by determining at a CrR 3.5 hearing the applicability of the statutory defense of being safely off the roadway.

## I. FINDINGS OF FACT

The State challenges those portions of findings of fact 2, 3, and 6 that say Reid's vehicle was safely off the roadway.

"[F]indings of fact entered following a CrR 3.5 hearing will be verities on appeal if unchallenged, and, if challenged, they are verities if supported by substantial evidence in the record." *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997); *see also State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). Evidence is substantial when it is sufficient to persuade a fair-minded person of the truth of the stated premise. *State v. Thetford*, 109 Wn.2d 392, 745 P.2d 496 (1987).

Finding of fact 2 states that Delaney "observed a car parked approximately three feet off the highway with it's [sic] lights on and motor running." Finding of fact 3 states that "Delaney stopped to investigate and found the Defendant Jay Reid asleep in the motor vehicle. After having a difficult time waking Mr. Reid, he ordered Mr. Reid from

the car in which he was parked." And finding of fact 6 states: "At the time of his arrest Mr. Reid's vehicle was 'safely off the roadway.' "

In its challenge to findings 2 and 3, the State argues only that they fail to contain additional details mentioned in the testimony. The State contends that finding 2 should include the fact that the car was stopped "a mere three (3) feet from the lanes of travel." And it contends that finding 3 should include the facts that (1) Delaney turned off the ignition and left the keys in the ignition; (2) Reid "was passed out . . . directly behind the steering wheel"; and (3) Reid "was the only occupant of the vehicle."

■■ The State does not argue and we find nothing in the record indicating that it requested the more detailed findings. Thus, it cannot object on appeal to their omission. *See, e.g., United States v. Gregg*, 179 F.3d 1312, 1317 (11th Cir. 1999); *Favell v. Favell*, 1998 Okla. Civ. App. 22, 957 P.2d 556, 562 (1997) (party failing to request detailed findings below cannot complain of lack of such findings on appeal). Further, an appellate court does not independently evaluate the testimony to embellish the findings. *See State v. Carner*, 28 Wn. App. 439, 441, 624 P.2d 204 (1981). Thus, we need not further consider the challenge to findings 2 and 3.

The State presents a different argument regarding finding 6. It contends that whether the vehicle was "safely off the roadway" is an issue to be decided by the ultimate trier of fact. We discuss this contention below in conjunction with conclusion of law 3. But insofar as this assignment of error relates to the quantity of evidence to support finding 6, Delaney's testimony that the car was not a hazard to traffic, presented no safety issue other than it was running, and was safely off the roadway provides substantial evidence in support of the challenged finding.

## II. PROBABLE CAUSE TO ARREST

The State challenges conclusion of law 2, which provides

that "Deputy Delaney exceeded the authority for an investigative stop in requiring Mr. Reid to perform field sobriety tests and in subsequently arresting Mr. Reid when he refused to perform the field sobriety tests." Citing *State v. Guzman-Cuellar*, 47 Wn. App. 326, 332, 734 P.2d 966 (1987), the State argues that Delaney properly expanded the scope of his investigation as his suspicions became stronger and more pointed and that there was probable cause to arrest Reid for being in physical control of a vehicle while under the influence of intoxicants.

■ A routine traffic stop is analogous to a *"Terry* stop."[2] *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984). Under *Terry*, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22. Further, an officer may approach and question a person under appropriate circumstances as part of his community caretaking function. *State v. Nettles*, 70 Wn. App. 706, 712, 855 P.2d 699 (1993); *State v. Hutchison*, 56 Wn. App. 863, 865-66, 785 P.2d 1154 (1990). The scope of the investigative stop "may be enlarged or prolonged as required by the circumstances if the stop confirms or arouses further suspicions." *Guzman-Cuellar*, 47 Wn. App. at 332 (citing *State v. Davis*, 3 Conn. App. 359, 488 A.2d 837, 840 (1985); *State v. Merklein*, 388 So. 2d 218, 219 (Fla. Dist. Ct. App. 1980); *People v. Hardy*, 142 Ill. App. 3d 108, 491 N.E.2d 493, 498, 96 Ill. Dec. 447 (1986); WAYNE R. LaFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 3.8, at 298 (1984)).

Here, in the middle of the night, Delaney came across a car parked a few feet off the highway, its engine running and a man asleep in the driver's seat. Those facts justified an initial investigation. *See Hutchison*, 56 Wn. App. at 867 (search justified when officer reasonably believed intoxicated defendant needed "aid and assistance").

---

[2]*Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

It took several attempts to get Reid's attention and then Reid still was not responsive until Delaney shook him. The vehicle smelled of alcohol and Delaney could smell intoxicants on Reid's breath. These facts justified Delaney's suspicion that Reid might be intoxicated and in physical control of the vehicle. RCW 46.61.504.[3]

■ Under these circumstances, it was not unreasonable for Delaney to ask Reid to take a field sobriety test. "[A] request for the performance of field sobriety tests during a routine traffic stop does not alone indicate that the motorist would feel subjected to coercive restraints comparable to those associated with a formal arrest." *Heinemann v. Whitman County*, 105 Wn.2d 796, 808, 718 P.2d 789 (1986). Correspondingly, Reid was under no legal obligation to take the test. *City of Seattle v. Personeus*, 63 Wn. App. 461, 465, 819 P.2d 821 (1991). Thus, the trial court was correct insofar as it concluded that Delaney could not arrest Reid solely for his refusal to participate in sobriety tests.

But this was not the sole basis for arresting Reid. Delaney could arrest Reid without a warrant if there was probable cause to believe that he had committed the offense of being in physical control of a vehicle while intoxicated. *City of Spokane v. Badeaux*, 20 Wn. App. 731, 734, 581 P.2d 1088 (1978).

■ "Probable cause to arrest must be judged on the

---

[3]The version of RCW 46.61.504 in effect at the time of Reid's arrest stated in pertinent part:

(1) A person is guilty of being in actual physical control of a motor vehicle while under the influence of intoxicating liquor or any drug if the person has actual physical control of a vehicle within this state:

(a) And the person has, within two hours after being in actual physical control of the vehicle, an alcohol concentration of 0.10 or higher as shown by analysis of the person's breath or blood made under RCW 46.61.506; or

(b) While the person is under the influence of or affected by intoxicating liquor or any drug; or

(c) While the person is under the combined influence of or affected by intoxicating liquor and any drug.

The Legislature amended the statute, effective January 1, 1999, to lower the alcohol limit to 0.08. Laws of 1998, ch. 213, § 5.

facts known to the arresting officer before or at the time of arrest." *State v. Gillenwater*, 96 Wn. App. 667, 670, 980 P.2d 318 (1999). "Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed." *State v. Terrovona*, 105 Wn.2d 632, 643, 716 P.2d 295 (1986); *State v. Braun*, 11 Wn. App. 882, 884-85, 526 P.2d 1230 (1974). The arresting officer needs more than a "bare suspicion of criminal activity." *Terrovona*, 105 Wn.2d at 643 (citing *Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)). But probable cause exists where the officer has "reasonable grounds for suspicion, along with evidence of circumstances sufficiently strong in themselves to allow a cautious and disinterested person to believe the suspect is guilty." *State v. Conner*, 58 Wn. App. 90, 98, 791 P.2d 261 (1990) (citing *State v. Scott*, 93 Wn.2d 7, 604 P.2d 943 (1980)).

▮ Thus, where the defendant appeared intoxicated and was seated in the driver's seat of a parked car that had its engine running, there was probable cause to arrest for being in physical control of a vehicle while intoxicated. *Badeaux*, 20 Wn. App. at 734. Further, a person in the driver's seat of a vehicle with a running engine can be found in control although that person was asleep. *City of Edmonds v. Ostby*, 48 Wn. App. 867, 870, 740 P.2d 916 (1987); *see also Badeaux*, 20 Wn. App. at 733 (driver was in intoxicated stupor and "dozed off" while being questioned by officer).

Reid cites RCW 46.61.504(2) and *State v. Smelter*, 36 Wn. App. 439, 674 P.2d 690 (1984), a Division One case, as support for the contention that there can be no reasonable cause to arrest where an individual is sleeping in the car. In dictum, the *Smelter* court noted a Utah case where the court found the driver not to be in physical control when the defendant "was asleep in a car parked completely off the traveled portion of the highway." 36 Wn. App. at 443

(citing *State v. Bugger*, 25 Utah 2d 404, 483 P.2d 442, 442-43 (1971)). The *Smelter* court went on to note that the same result would occur under RCW 46.61.504, which does not allow conviction of a person who has moved his vehicle safely off the roadway. 36 Wn. App. at 443.

But the dictum in *Smelter* does not relate to a determination of probable cause to arrest. *See Smelter*, 36 Wn. App. at 443. By contrast, in *Ostby*, Division One found substantial evidence to support a conviction under RCW 46.61.504 where the driver was asleep in the driver's seat of a car located in a parking lot with its engine running and its transmission in drive. 48 Wn. App. at 870-71. The *Ostby* court reasoned that "[t]his situation posed a danger to the public." 48 Wn. App. at 871. Similarly, the accumulated facts here—the vehicle on the roadside shoulder, the running engine, the officer's difficulty in rousing Reid, Reid's panicked and inappropriate response to the officer, his dropping of the car keys—are sufficient to believe that Reid was guilty of the offense of being in physical control, even excluding Reid's refusal to take the field sobriety test. *See Badeaux*, 20 Wn. App. at 733-34.

The purpose of RCW 46.61.504 is to deter intoxicated drivers from assuming control of a vehicle and placing it in a position that poses a danger to the public. *See Ostby*, 48 Wn. App. at 871; *McGuire v. City of Seattle*, 31 Wn. App. 438, 442, 642 P.2d 765 (1982). Given the situation that Delaney faced, he had a legitimate concern that Reid could have roused himself enough to drive back onto the highway and pose a substantial hazard to himself and others. The facts here provided reasonable grounds to believe Reid was guilty of physical control and provided probable cause to arrest him.

### III. The Defense Set Forth in RCW 46.61.504(2)

The State challenges conclusion of law 3, which states: "Mr. Reid's vehicle was safely off the roadway and therefore Mr. Reid could not be convicted of a crime at the time that

Deputy Delaney placed him under arrest." Citing *McGuire*, 31 Wn. App. at 443-44, the State argues that the trial court erred in relying on RCW 46.61.504(2) to suppress the evidence because the statute sets forth an affirmative defense, not an element of the offense. It contends that the arresting officer need not determine the existence of an affirmative defense in deciding whether there is probable cause to arrest. Accordingly, the court should not consider the affirmative defense when determining probable cause in a CrR 3.5 hearing context.

■ RCW 46.61.504(2) states in relevant part: "No person may be convicted under this section if, prior to being pursued by a law enforcement officer, the person has moved the vehicle safely off the roadway." Division One of this court construed this language, as set forth in the SEATTLE TRAFFIC CODE, as an affirmative defense. *McGuire*, 31 Wn. App. at 444 ("It is up to the defendant in such a situation to present the evidence which will exculpate him.").

We find no Washington cases decisive of the precise issue before us. But decisions from two other jurisdictions support the State's position. *See State v. Baker*, 216 Ga. App. 66, 453 S.E.2d 115, 117 (1995); *State v. Lawrence*, 36 Or. App. 733, 585 P.2d 727, 728-29 (1978).

In *Baker*, the trial court suppressed cocaine evidence on the basis of entrapment. 453 S.E.2d at 117. The appellate court reversed, reasoning that the affirmative defense of entrapment was "not a rationale for suppressing evidence." *Baker*, 453 S.E.2d at 117. The *Baker* court held that a ruling on an affirmative defense is premature if raised on a motion to suppress. 453 S.E.2d at 117.

In *Lawrence*, the trial court suppressed documentary evidence on the basis of the State's failure to comply with a statutory notice requirement. 585 P.2d at 728. The appellate court noted the inappropriateness of suppressing evidence based upon an affirmative defense. *Lawrence*, 585

P.2d at 728-29. Because of the confused state of the record, the *Lawrence* court remanded the matter.[4] 585 P.2d at 729.

Here, the trial court considered the matter during a CrR 3.5 hearing to determine the admissibility of involuntary, incriminating statements, not during a CrR 3.6 hearing to determine the admissibility of other "physical, oral or identification evidence." But we see no significance in this distinction. *State v. Williams*, 137 Wn.2d 746, 751, 975 P.2d 963 (1999); CrR 3.6(a). Both types of hearings exist to determine the admissibility of evidence and the trial court will not admit evidence that is the product of State misconduct under either rule. *See Williams*, 137 Wn.2d at 751; *State v. Rakosky*, 79 Wn. App. 229, 237, 901 P.2d 364 (1995). Thus, we find the reasoning in *Baker* equally applicable here.

As the *Baker* court stated, generally, an affirmative defense is "an issue of fact for resolution by the jury." 453 S.E.2d at 117; *see also Ostby*, 48 Wn. App. at 870 ("Whether the vehicle was 'safely off the roadway' is a factual issue to be decided by the trier of fact."). The initial burden is on the defendant to produce exculpatory evidence. *McGuire*, 31 Wn. App. at 444. Then, the burden falls upon the State to rebut that evidence. *Baker*, 453 S.E.2d at 117.

Further, as noted above, the officer in the field must determine the existence of probable cause based upon "the facts known to [him] before or at the time of arrest." *Gillenwater*, 96 Wn. App. at 670. At the time of arrest, the officer cannot know and it would be unreasonable to require him to estimate the likelihood of success of a potential affirmative defense.

■ Thus, because an affirmative defense is properly a matter for the ultimate trier of fact, it was premature for the trial court to rule on the merits of the defense when

---

[4]On the other hand, the *Lawrence* court indicated that it would have approved if the record clearly showed that the parties treated "the matter as a pre-trial hearing on the admissibility of evidence." 585 P.2d at 729. But, because of the confused record, the *Lawrence* court found it necessary to remand. 585 P.2d at 729. Here, the trial court conducted a CrR 3.5 hearing.

considering the motion to suppress. *See Baker,* 453 S.E.2d at 117. Of course, if the evidence were susceptible of only one inference, upon proper motion the trial court could rule on the applicability of the defense as a matter of law. But given the facts here, that is not the case. Thus, the trial court erred by relying upon the affirmative defense in RCW 46.61.504(2) to suppress Reid's statements following a CrR 3.5 hearing.

### IV. UNLAWFUL SEARCH

Finally, the State challenges conclusion of law 4, which states: "Deputy Delaney's search of Mr. Reid's vehicle incident to his unlawful arrest is therefore itself unlawful." Technically, this appeal relates to a ruling on a CrR 3.5 motion, not the suppression of physical evidence under CrR 3.6. But as the trial court apparently consolidated the two in its ruling, we note that because Delaney had probable cause to arrest Reid for being in physical control of a vehicle while under the influence, he also had authority to conduct a search of the passenger compartment of the car incident to that arrest. *Badeaux,* 20 Wn. App. at 734; *State v. Stroud,* 106 Wn.2d 144, 152, 720 P.2d 436 (1986); *New York v. Belton,* 453 U.S. 454, 460-61, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). Nonetheless, because the record does not indicate exactly where Delaney found the firearm, we cannot properly review the legality of the search. *See Stroud,* 106 Wn.2d at 152 (holding that scope of automobile search incident to arrest does not extend to locked container or locked glove compartment). Consequently, the validity of the vehicle search is a matter for the trial court to reconsider on remand.

We reverse the order suppressing Reid's statements and the judgment of dismissal and remand for further proceedings consistent with this opinion.

ARMSTRONG, A.C.J., and HUNT, J., concur.